**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK ANTHONY ROBINSON,** | : | **Civil No. 3:11-CV-1724** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Mariani)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **FRANKLIN TENNIS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of the Case

This case comes before the court for a statutorily mandated screening review

of an amended complaint filed by the plaintiff, Mark Anthony Robinson, a state

inmate previously housed at the State Correctional Institution, Rockview.  Robinson's

initial complaint was filed on September 15, 2011.  (Doc. 1.)  On September 24,

2012, upon consideration of a motion to dismiss filed by one of the defendants,

Physician Assistant Koltay, Robinson's Eighth Amendment deliberate indifference

claim against this defendant was dismissed; Robinson was directed to file an amended

complaint as to all defendants on or before October 20, 2012; and the other aspects

of the pending motion to dismiss were denied as moot in light of the court's direction

to Robinson to file an amended complaint.  (Doc. 51.)

Robinson did not comply with the October 20, 2012, deadline set by this court for filing an amended complaint, choosing instead to wait until April 19, 2013, before filing a motion to amend, and a proposed amended complaint, some six months beyond the deadline previously prescribed by this court. (Doc. 63.) A review of Robinson's proposed amended complaint reveals that it levels a series of facially inadequate claims.

For example, Robinson's amended complaint makes claims against prison supervisors, claims based upon the defendants' supervisory status and what Robinson perceives to be their failure to favorably respond to past complaints. (Doc. 63-1.) Robinson also appears to persist in leveling an Eighth Amendment deliberate indifference claim against defendant Koltay, something he was admonished by the court that he could not do in the court's September 24, 2012 order. (Id.) Robinson also alleges that one defendant, Lieutenant Grice, confiscated some family photos belonging to Robinson, while stating in his amended complaint that he had access to administrative remedies with respect to this loss-of-property issue, and exhausted his administrative remedies. (Id.) Finally, Robinson lodges a series of claims against a disciplinary hearing examiner, and disciplinary hearing appeal official, alleging misconduct in the course of disciplinary matters which resulted in the imposition of a term of disciplinary custody for Robinson, but did not in any other way prolong or

alter his sentence.  (Id.)  Thus, Robinson appears to make disciplinary hearing due process claims in a setting where courts typically have held that inmates do not possess a protected liberty interest.  In addition, to these facially flawed claims, Robinson's proposed amended complaint levels other allegations relating to alleged use of excessive force, failure to intervene, and medical deliberate neglect against a number of defendants.  These claims do not appear, on their face, to be subject to summary dismissal.

Recognizing that an assessment of any motion to amend a complaint requires us to determine whether further amendment would be futile, and entails an examination of whether the amended complaint fails to state a claim upon which relief can be granted, we have conducted a threshold review of this proposed amended complaint and find that numerous claims and parties should be dismissed from the amended complaint.  Accordingly, for the reasons set forth below, it is recommended that this motion to amend be granted, in part, and denied, in part.

## II.  **Discussion**

### A.  **Screening of *Pro Se* Amended Complaints–Standard of Review**

Decisions regarding motions to amend pleadings rest in the sound discretion of the district court and will not be disturbed absent a abuse of that discretion.  See

e.g., Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001)  That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15 of the Federal Rules of Civil Procedure.  In this regard, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion to deny a motion to amend, Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001), and may deny a request:

> if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party.  Adams, 739 F.2d at 864. Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend.  Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)).  Thus, our review of the question of undue delay . . . will "focus on the movant's reasons for not amending sooner,"  Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988).

Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

Furthermore, "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.'  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ('Burlington'); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993). 'Futility'

means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Moreover, a party seeking to supplement pleadings must act in a diligent fashion. Thus, for example, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir.1998)." Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3d Cir. 2002).

An assessment of whether a particular amendment to a complaint is futile entails an evaluation of whether "the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Therefore, in ruling upon a request for leave to amend a complaint we should be guided by the benchmark standard for the sufficiency of complaints; namely, whether a *pro se* amended complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.

2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint

states facts upon which relief can be granted when ruling on a motion to dismiss. In

Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when

considering a motion to dismiss, a court should "begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of

truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the

Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions. Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court

must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Judged against these standards, Robinson's proposed amendment of this complaint is futile in several respects since a number of the claims he advances simply fail to state a claim upon which relief can be granted, and should be dismissed. These legally flawed claims are discussed separately below.

**B.** **The Law of The Case Doctrine Compels Dismissal of Eighth Amendment Claims Against Defendant Koltay**

At the outset, to the extent that Robinson endeavors to repeat the previously dismissed Eighth Amendment claim that he lodged against defendant Koltay in his original complaint, he is clear that he may not do so in light of the prior district court order dismissing that claim. Under the law of the case doctrine, Robinson is simply precluded from re-litigating this matter in the guise of an amended complaint something that was specifically forbidden by the district court in its September 24, 2012 order. "Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. . . . . The purpose of this doctrine is to promote the 'judicial system's interest in finality and in efficient administration. Todd & Co., Inc. v. S.E.C., 637 F.2d 154, 156 (3d Cir. 1980).' " Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1981). The

contours of this settled doctrine were recently described by the United States Court of Appeals for the Third Circuit in the following terms:

> In <u>Arizona v. California</u>, 460 U.S. 605 (1983), the Supreme Court noted:
>
>> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.
>
> <u>Id</u>. at 618 (citations omitted). The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"

<u>In re Pharmacy Benefit Managers Antitrust Litigation</u>, 582 F.3d 432, 439 (3d Cir.2009)(reversing arbitration order in antitrust case on law-of-the-case grounds)(citations omitted). It is clear that "[t]he ... doctrine does not restrict a court's power but rather governs its exercise of discretion." <u>Id</u>. (quoting <u>Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc.</u>, 123 F.3d 111, 116 (3d Cir.1997)) (citations omitted). In exercising that discretion, however, courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." <u>Id.</u> (quoting <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 816 (1988)). In addition to that narrow class of cases where the prior ruling was manifestly unjust, the type of "extraordinary circumstances" that warrant a court's

exercising its discretion in favor of reconsidering an issue decided earlier in the course of litigation typically exist only where (1) new evidence is available, or (2) a supervening new law has been announced. Id. (citing, Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997)).

Here, the law of the case doctrine clearly precludes any further consideration of Eighth Amendment deliberate indifference claims against defendant Koltay, since such claims were expressly foreclosed by the district court in its September 24, 2012 order, and Robinson has shown neither new facts nor a supervening change in the law. Therefore, to the extent that the amended complaint simply re-states this claim, the claim should be dismissed.[1]

### C. As to The Supervisory Defendants, Robinson's Amended Complaint Still Fails to State a Claim Upon Which Relief Can Be Granted

In addition, as to the supervisory defendants named in this amended complaint, Superintendents Tennis and Lamas, Deputy Superintendents Horton and Marsh, and Program Manager Miller, we believe that the amended complaint is still flawed in ways which calls for the dismissal of these claims and parties.

---

[1]It appears that Robinson may also be attempting to file a retaliation claim against Koltay, alleging that she denied him care in retaliation for some prior lawsuit which he filed against her. While we express no views on the merits of this claim, out of an abundance of caution, we would recommend that the amended complaint be served as to this defendant on this particular claim.

In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that agency supervisors may be exposed to liability only in certain, narrowly defined, circumstances. At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.* See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, in many instances Robinson still does little more than name a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading. To the extent that Robinson simply premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can Robinson sustain a supervisory liability claim against these officials by simply alleging in a talismanic fashion that they failed to train, oversee or supervise their subordinate employees. In this regard, we note that: " 'Numerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.' Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012). To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined. As the United States Court of Appeals for the Third Circuit has observed: "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy,

practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr._, 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

Robinson has not sufficiently pled either of these theories of supervisory liability to support his current amended complaint. First, Robinson has not alleged well-pleaded facts showing that "the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010). Moreover, Robinson has not set forth well-pleaded facts which would establish a claim of supervisory liability grounded upon an assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm," Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010), since Robinson has not identified any particular policy, practice or custom which led to the various injuries which he alleges that he has suffered. Instead, Robinson's complaint merely describes discrete encounters with disparate correctional staff which he alleges violated his rights.

Furthermore, to the extent that Robinson's supervisory liability claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances, this claim also fails. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their

failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

This rule applies with [particular force to medical neglect claims, like some of those made by Robinson. As to such claims, it is also well-established that non-medical correctional supervisors may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007). This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance concerning medical issues. Where non-medical corrections staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez, 2010 WL 569852, 7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006). Rather, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v.

Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)."  Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, as presently drafted, the allegations in the plaintiff's amended complaint against these supervisory defendants consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim.  Therefore, these defendants are entitled to be dismissed from this case.

### D.    Robinson's Prison Disciplinary Hearing Due Process Claims Should Also Be Dismissed

Further, in this amended complaint Robinson sues a number of prison disciplinary hearing and appellate officials, defendants Kuhn and MacIntyre, complaining about the conduct prison discipline proceedings which Robinson states simply resulted in a period of disciplinary custody but did not otherwise prolong the plaintiff's incarceration.  To the extent that Robinson seeks to bring a due process claim against these defendants in this setting he fails to state a claim upon which relief may be granted, because he fails to articulate a legally cognizable liberty interest.

In analyzing any procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."  Shoats v. Horn, 213 F.3d 140,

143 (3d Cir.2000) (citing Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).  Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it.  Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).  Protected liberty or property interests generally arise either from the Due Process Clause or from some specific state-created statutory entitlement.  See Board of Regents v. Roth, 408 U.S. 564, 575, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  However, in the case of prison inmates,

> In Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the court concluded that state-created liberty interests could arise only when a prison's action imposed an *'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'* ... In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143–44 (citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary

incidents of prison life in similar situations, and, therefore, do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir.2002) (7 months disciplinary confinement). See, e.g., Dunbar v. Barone, 12–1337, 2012 WL 2775024 (3d Cir. July 10, 2012) (held, inmate placed in disciplinary custody for 540 days (about eighteen months) as a result of his misconduct. He did not present any evidence that the conditions he faced in disciplinary custody amounted to an "atypical and significant hardship" under Sandin, and we have held that this type of confinement does not constitute an "atypical and significant hardship." citing Griffin v. Vaughn, 112 F.3d 703, 705–07 (3d Cir.1997) (ruling that fifteen months in segregation was not an atypical and significant hardship)); Arango v. Winstead, 352 F. App'x 664, 666 (3d Cir.2009) (held, placement in administrative segregation for days or months at a time or transfers to more restrictive custody do not implicate a protected liberty interest, citing Torres, 292 F.3d at 150; Fraise v. Terhune, 283 F.3d 506, 522–23 (3d Cir.2002)); Henderson v. Kerns–Barr, 313 F. App'x 451, 452 (3d Cir.2008) (90–day disciplinary confinement did not implicate a liberty interest). Therefore, as a threshold matter, to the extent that he advances a due process claim against these officials, Robinson has not articulated a sufficient liberty interest to trigger a valid due process claim in this prison disciplinary setting, and his due process claims fail.

Liberally construed, Robinson may also be attempting to bring a retaliation claim against defendant Kuhn, the disciplinary hearing officer, alleging that Kuhn ruled against the plaintiff in a prison disciplinary hearing retaliation for Robinson's actions in prior disciplinary and legal proceedings. The plaintiff faces an exacting burden of proof in advancing this claim since it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates

have often invited courts find violations of this due process right based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F. App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F. App'x 488 (3d Cir. 2007).

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992);

Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid Bivens cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v.

Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002). Furthermore, while filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010).

Yet, while these claims are judged against exacting legal standards, resolution of prison disciplinary retaliation claims typically entails an examination of matters outside the pleadings relating to the disciplinary hearings themselves. Indeed, such consideration of matters outside the pleadings is often essential to a determination of whether "some evidence" supported the disciplinary citation, a determination that is the keystone to analysis of constitutional claims in this setting. See Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010) Therefore, at this stage, where we are limited to an assessment of the pleadings themselves, we should not dismiss this claim, but

should serve the complaint and, if appropriate, await the filing of a properly documented summary judgment motion addressing this particular claim.  Id.

## E.    Robinson's Property Confiscation Claims Also Fail

Robinson also alleges that one defendant, Lieutenant Grice, confiscated some family photos belonging to Robinson.  While advancing this claim, Robinson states in his amended complaint that he had access to administrative remedies with respect to this loss-of-property issue, and exhausted his administrative remedies.

To the extent that the plaintiff is attempting to advance a Fourth Amendment claim against Lieutenant Grice in this prison setting, it is clear that this claim fails as a matter of law.  While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV, in order to give force to this guarantee, government officials are limited to conducting searches that are reasonable. Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010).  As the Third Circuit has explained:

> Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, Bell [v. Wolfish, 441 U.S. 520, 559 (1979)].  "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  Id.

Florence, 621 F.3d at 301.

In Hudson v. Palmer, 468 U.S. 517, 529,(1984), and Block v. Rutherford, 468 U.S. 576 (1984) the Supreme Court directly addressed this issue in a custodial setting and unequivocally foreclosed Plaintiff's claims relating to the searches of his cell. In Block and Hudson the Supreme Court flatly held that the search of a cell by prison officials does not violate the Fourth Amendment. More recently, the United States Court of Appeals for the Third Circuit has explained:

> The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells. Hudson v. Palmer, 468 U.S. 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration. Id. at 527. Mindful that internal security is a chief concern in prisons, the court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells. Id. Therefore, "the Fourth Amendment has no applicability to a prison cell."

Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001).

In sum, it is beyond argument that the plaintiff did not enjoy a privacy right in his prison cell. For these reasons, plaintiff's Fourth Amendment constitutional claims regarding the search of this cell lack any legal merit. Moreover, inmate due process claims arising out of the confiscation of property are also judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. See Bell v.

> _Wolfish_, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
> [Therefore] "[A]n unauthorized intentional deprivation of property" by
> prison officials does not violate the Due Process Clause "if a meaningful
> postdeprivation remedy for the loss is available." _Hudson v. Palmer_,
> 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing _Parratt
> v. Taylor_, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-
> deprivation notice is not constitutionally required. _See id._

_Monroe v. Beard_, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting: (1) the confiscation of property; _and_ (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. Here, Robinson's pleadings do not meet this standard for a prison property confiscation due process claim, since Robinson alleges that he possessed, and used, administrative post-deprivation remedies prior to filing this lawsuit. Therefore, this claim would also fail on its merits.

While the foregoing claims are all flawed, and should be dismissed, we note that the amended complaint alleges various Eighth Amendment excessive force, failure to intervene, and medical deliberate indifference claims against the following correctional staff–Unit Manager Granlund, Lieutenant Sutton, Sergeant Best, and Officers Heverly and Davis. Without further opining on the merits of these claims, we find that they are sufficiently well-pleaded to be served and recommend that the amended complaint be served as to these defendants and claims at this time.

### III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for leave to amend his complaint (Doc. 63.), be GRANTED, in part, and DENIED, in part as follows:

1.    IT IS RECOMMENDED that the motion be granted, and the amended complaint served upon defendants Unit Manager Granlund, Lieutenant Sutton, Sergeant Best, and Officers Heverly and Davis.   IT IS FURTHER RECOMMENDED that the amended complaint be served as defendants Koltay and Kuhn, but only with respect to Robinson's First Amendment retaliation claims.

2.    As for the supervisory defendants, Superintendents Tennis and Lamas, Deputy Superintendents Horton and Marsh, Program Manager Miller, Lieutenant Grice and Chief Hearing Examiner MacIntyre, IT IS RECOMMENDED that the motion be DENIED, and the defendants be DISMISSED. IT IS FURTHER RECOMMENDED that any Eighth Amendment claims as to defendant Koltay, and any due process claims as to defendant Kuhn be DISMISSED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen

(14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of May 2013.

*__S/Martin C. Carlson__*
Martin C. Carlson
United States Magistrate Judge