**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK ANTHONY ROBINSON,** | : | **Civil No. 3:11-CV-1724** |
| | : | |
| **Plaintiff** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANKLIN J. TENNIS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.  Statement of Facts and of the Case

#### A.  Introduction

The Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA") requires that prisoners present their claims through an administrative grievance process prior to seeking redress in federal court.  Specifically, the Act provides that:

> No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement of the PLRA is one of "proper exhaustion."  Woodford v. Ngo, 548 U. S. 81, 84 (2006).  Failure to comply with the procedural requirements of the available grievance system will result in a claim being

deemed procedurally defaulted.  Id. at 90; Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

The PLRA also imposes responsibilities upon federal courts when addressing inmate lawsuits.  Specifically, the PLRA has been interpreted to impose upon the court the responsibility to determine whether an inmate has fully and properly exhausted his administrative remedies prior to the filing of a complaint, even if that determination requires the resolution of disputed facts.  See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury).  In this case we are called upon to perform this duty, imposed upon us by the PLRA, and ascertain whether the defendants have carried their burden of proof and persuasion on this affirmative defense by showing that the inmate-plaintiff, Mark Anthony Robinson, failed to fulfill his responsibility under the PLRA to fully and properly exhaust his administrative remedies prior to filing this lawsuit.  Having conducted an evidentiary hearing for the purpose of determining whether the defendants have satisfied their burden of proof and persuasion on this affirmative defense, for the reasons set forth below we conclude that the defendants have not established an entitlement to this affirmative defense on the record now before us.  Accordingly, we recommend that

the district court decline to dismiss this particular claim on exhaustion grounds at this time.

## B.    Procedural History and Factual Background

This lawsuit involves claims brought by a state inmate and frequent litigant in federal court against a number of staff members and officials employed by the Pennsylvania Department of Corrections, alleging that these defendants subjected him to unlawful excessive force in violation of the Eighth Amendment to the United States Constitution, and retaliation against the plaintiff for his exercise of protected First Amendment activity.  The plaintiff, Mark Anthony Robinson, is currently an inmate in the custody of the Pennsylvania Department of Corrections, housed at the State Correctional Institution at Greene (SCI-Greene).  The claims that Robinson has brought in this case all emanate from incidents that allegedly occurred while Robinson was housed at SCI-Rockview.

Robinson commenced this lawsuit in September 2011, and the plaintiff subsequently amended him complaint in August 2013.  Over the past years the district court has entered a series of orders narrowing the scope of the plaintiff's claims and the defendants that are the proper subject of those claims.  See e.g., Robinson v. Tennis, No. 3:11-CV-1724, 2013 WL 4458977 (M.D. Pa. May 23, 2013) report and recommendation adopted in part, rejected in part, No. 3:11-CV-1724, 2013 WL

4458995 (M.D. Pa. Aug. 16, 2013); Robinson v. Tennis, No. 3:11-CV-1724, 2012 WL 4442586, at *1 (M.D. Pa. Sept. 24, 2012). As a result of this litigation process the claims and issues that remain before the court have been narrowed significantly, but one claim that remains in this lawsuit is Robinson's Eighth Amendment excessive force claim as to Defendants Sutton, Heverly, Best, and Davis, arising out of an October 2010 cell extraction at SCI Rockview.

As to this claim, the defendants initially moved for summary judgment arguing that Robinson had not fully exhausted the 3-step grievance process generally prescribed by the Department of Corrections. Robinson, however, responded to this contention by arguing that he did exhaust the administrative remedies that were available to him by filing a grievance under the general prison grievance policy. According to Robinson, after filing this initial grievance, Robinson was informed that his grievance was going to be investigated as an allegation of inmate abuse, an allegation which is governed under a separate Department of Corrections policy. Therefore, by following this administrative path, Robinson argued that he had exhausted the remedies which were available to him once this inmate abuse allegation was investigated and closed by prison officials.

Thus, the exhaustion issues regarding this particular claim identified an essentially factual contest between the parties concerning which procedures Robinson

should have utilized and whether Robinson fully exhausted those procedures under the applicable prison guidelines prior to filing this lawsuit. Because this particular exhaustion defense entailed a resolution of disputed factual matters, we recommended that the district court decline to enter summary judgment on behalf of the defendants, but instead refer this question back to us for an evidentiary hearing and further development of the factual record. (Doc. 141.)

The district court adopted this recommendation, (Doc. 144.), and we subsequently conducted an evidentiary hearing relating to this exhaustion defense. (Docs. 145-47.) Notably, at this hearing, the defendants–who had the burden of proof and persuasion on this affirmative defense–presented no witnesses or testimony but instead simply provided the court with copies of various prison policies along with documents detailing the processing history of Robinson's grievance relating to the October 2010 excessive force claim. (Id.) Following the hearing, the we afforded all parties the opportunity to make post-hearing submissions. (Docs. 149, 150.) We have reviewed these submissions, and the transcript of this hearing. Accordingly, this matter is now ripe for resolution.

In the absence of any testimony by the defendants on this question, the scope of our review remains largely limited to the same factual record which was before us when we recommended that the defendants' motion for summary judgment be denied.

That record reveals the following facts relating to exhaustion of Robinson's administrative remedies in this case:

In October of 2010 the Department of Corrections maintained a written administrative grievance policy which was embodied in a Departmental publication, DCM-804. (Doc. 149, Ex. A.) Under DC-ADM 804, the Department of Corrections maintained a grievance system that offered a three-phase grievance and appeals procedure. (Id.) Pursuant to DC-ADM 804, inmates first filed grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint was based occurred. If the inmate was unsatisfied with the initial review of his grievance, he could appeal the decision to the Facility Manager (Superintendent). Upon receiving a decision from the Superintendent, the inmate was entitled to file an appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 days of the Superintendent's decision. (Id.) The grievance policy embodied in DC-ADM 804 was implemented as a policy that articulated a formal procedure, a "forum for review," and an avenue of appeal. Thus, DC-ADM 804 was instituted to ensure that inmates had an avenue to resolve specific problems, and that the administrative avenue consisted of an initial review and then two tiers of appellate review, imposing different levels of responsibilities on the inmates during each stage of the administrative process. In order to exhaust

administrative remedies in accordance with this three-step process, inmates generally must file grievances and appeals in the place, time, and manner that the DOC's administrative rules require. (Id.)

This policy statement, however, carved out an exception for inmate abuse allegations, and called for separate treatment such allegations, stating that: "A grievance dealing with allegations of abuse shall be handled in accordance with Departmental policy ADM-DC 001, 'Inmate Abuse Allegation Monitoring Process'" (Id., AD-DC 804(VI)(B)(10).) Notably, this is the only reference to the inmate abuse policy in AD-DCM 804. Thus, nothing in the general grievance policy cautions inmates that they must further exhaust grievances under ADM-DCM 804 after an inmate abuse allegation investigation concludes. Likewise, Departmental policy ADM-DC 001, the Inmate Abuse Allegation Monitoring Process, states that inmate may report alleged abuse by filing a grievance pursuant to the general grievance police, AD-DCM 804, but also permits inmates to refer abuse allegations through other avenues which fall outside the general grievance policy. Furthermore, this inmate abuse allegation investigation policy, AD-DCM 001, does not specify that inmates need to return to AD-DCM 804's general grievance policy to seek further administrative review once an inmate abuse allegation is investigated and closed pursuant to AD-DCM 001. (Doc. 149, Ex. B.) Notwithstanding the silence of both

policies on this score, the defendants take the position that the policies should be read together to require something that neither written policy clearly states; namely, the defendants contend that the two policies required Robinson to seek further review of the closure of an inmate abuse investigation conducted under AD-DCM 001 pursuant to the multi-step grievance appeal process prescribed by AD-DCM 804 before filing an inmate abuse claim in federal court.

It was against the backdrop of these two ambiguous, but interlocking, prison policies that this particular exhaustion claim comes before the court. With respect to this claim the evidence reveals that Robinson filed a grievance, Grievance Number 340486, on October 22, 2010, alleging that he had been the victim of an excessive force incident. (Doc. 149, Ex. C.) According to Robinson this episode had occurred on the very same day as his grievance, October 22, 2010. Thus, Robinson acted promptly in initially grieving this matter. Two days later, on October 24, 2010, Robinson wrote to the then Acting Secretary of Corrections, Shirley Moore-Smeal, repeating his allegations of abuse at the hands of correctional staff. (Id.) By notifying prison staff in writing of this alleged abuse Robinson was following another pathway authorized under AD-DCM 001 for reporting alleged staff abuse, a pathway which was wholly independent of the general grievance process prescribed by AD-DCM 804.

On November 5, 2011, Robinson was provided with an Initial Review Response from Captain Eaton relating to the October 22, 2010, grievance he had filed pursuant to AD-DCM 804. That grievance response informed Robinson that his allegations were being investigated as an inmate abuse claim pursuant to DC-ADM 001, which governed the investigation of inmate allegations of abuse. (Id., Ex. D.) Nothing in this November 5, 2010, response instructed Robinson that he needed to pursue further appeals under AD-DCM 804 once the investigation of his abuse allegations was completed pursuant to AD-DCM 001. (Id.)

On November 17, 2010, Robinson was also provided with a response to his October 24, 2010, letter to the then Acting Secretary of Corrections, Shirley Moore-Smeal which had reported this alleged abuse to Moore-Smeal. (Id.) That response simply advised Robinson that his concerns were being reviewed through the grievance process. On January 25, 2011, Robinson wrote another letter to then acting Secretary of Corrections, acknowledging his receipt of this November 17, 2010, correspondence, but expressing confusion regarding the administrative appeals path he should follow in pursuing this abuse claim. (Id.) On January 31, 2011, Robinson received a response to his January 25, 2011, letter. (Id.) The response did not provide Robinson with further specific guidance regarding how he should navigate these two prison policies, but instead simply advised Robinson that his concerns were

being addressed through the grievance process, and instructed him to follow proper procedure to appeal any grievance. Thus, this reply reminded Robinson that he needed to exhaust the grievances available to him, but did not describe for Robinson the pathway for administrative exhaustion of an abuse allegation that had been referred for investigation pursuant to AD-DCM 001.

On March 4, 2011, Captain Eaton authored a memo advising Robinson that his allegations of abuse had been investigated and that they had been deemed unfounded. (Id.) At the hearing conducted in this case, Robinson disputed ever receiving this notice, but in any event the notice provided Robinson with no guidance regarding what further steps were necessary to fully exhaust this claim. It is undisputed that Robinson took no further action to grieve this matter prior to filing this lawsuit.

## II. <u>Discussion</u>

### A. <u>The Defendants Have Not Carried Their Burden of Proof and Persuasion Regarding the Affirmative Defense of PLRA Exhaustion With Respect to this October 2010 Excessive Force Claim</u>

In this case, the defendants urge the court to dismiss Robinson's October 2010 excessive force claim, arguing that the plaintiff has failed to fully exhaust the administrative remedies available to him under the prison's formal grievance policy. This alleged failure to fully pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act

provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages claims like those made here grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money

11

damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency.... Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013). In accordance with the PLRA, in order to prevail on this affirmative defense a defendant must show that the prisoner failed

to comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought. See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

Whether an inmate has fully and properly exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010). Where this process entails fact-finding and resolution of factual

disputes, the court may resolve the issue of exhaustion through an evidentiary hearing. As the court of appeals has observed:

> [J]ust as subject-matter jurisdiction, personal jurisdiction, and venue, exhaustion is a "threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." Dillon, 596 F.3d at 272 (emphasis added); see Pavey, 544 F.3d at 741 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to."); cf. McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (likening the doctrine of exhaustion of administrative remedies to "abstention, finality, and ripeness-that govern the timing of federal-court decisionmaking"); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 n. 9, 58 S.Ct. 459, 82 L.Ed. 638 (1938) (describing exhaustion as a "rule of judicial administration"). . . . . [I]t is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order to determine whether the claims were exhausted. See Bryant, 530 F.3d at 1373–74 (holding the district court properly acted as fact finder in resolving conflicting evidence that raised a genuine issue of material fact about whether administrative remedies were available to the prisoner plaintiffs); accord Messa, 652 F.3d at 309; Dillon, 596 F.3d at 271. Matters of judicial administration often require judges to decide factual disputes and the Seventh Amendment is not implicated as long as the facts are not bound up with the merits of the underlying dispute.

Small v. Camden Cnty., 728 F.3d 265, 269-70 (3d Cir. 2013)

Moreover, when assessing an exhaustion claim, it is important to note that the exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. Nyhuis v. Reno, 204 F.3d 65, 90 (3d Cir. 2000); Spruill v. Gillis, 372 F.3d

218, 227-32 (3d Cir. 2004). An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him. Woodford, 548 U.S. at 95. However, if an inmate shows that the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112-13. Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." Small v. Camden Cnty., 728 F.3d 265, 273 (3d Cir. 2013).

In this case, in determining whether Robinson fully and properly exhausted the remedies available to him, we are called upon to consider the interplay of two prison policies, the general prison grievance policy, AD-DCM 804, and AD-DCM 001, the inmate abuse investigation policy. At the time of these events, the relationship between these two policies was only partially explained in the policy statements themselves. Thus, both policy statements indicated that an inmate could initiate an abuse investigation under AD-DCM 001 by filing a grievance pursuant to AD-DCM 804. However, neither policy statement instructed an inmate that he or she must return to the three-tier administrative grievance process prescribed by AD-DCM 804

after an investigation into the inmate abuse allegations conducted pursuant to a separate policy, AD-DCM 001, had concluded. For their part, the defendants invite us to infer such an additional administrative requirement from the silence of these two policies, arguing that "[n]either DC-ADM 804 nor DC-ADM 001 contain any provisions which excuse an inmate from completing the grievance process when an investigation of abuse has been triggered by an allegation." (Doc. 149, p.6.) While this may be true, mindful of the fact that "[f]ailure to exhaust is an affirmative defense the defendant must plead and prove," Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013), we are also constrained to note that neither DC-ADM 804 nor DC-ADM 001 contain any provisions which *require* an inmate to complete the grievance process when an investigation of abuse has been triggered by an allegation in a grievance. Thus, the defendants urge us to graft a further administrative exhaustion requirement onto the investigation of inmate abuse allegations, and require full exhaustion under both of these policies even though neither policy expressly calls for that level of administrative review.

Further, when we consider inmate abuse claims that are investigated pursuant to AD-DCM 001, we note that this policy statement by its own terms seems to allow for the reporting of inmate abuse matters through administrative channels that are entirely divorced from the general grievance policy, AD-DCM 804. In fact, it is clear

16

that: "'The Pennsylvania DOC has established several methods by which Pennsylvania inmates can grieve their claims of abuse before seeking redress in federal court.' Knauss v. Shannon, Civil No. 1:CV–08–1698, 2010 WL 569829 at *7 (M.D.Pa. Feb.12, 2010). Under the 'Inmate Abuse Allegation Monitoring' policy of DC–ADM 001, an inmate can report abuse in three different ways: by reporting it verbally or in writing to any staff member; by filing a grievance in accordance with DC–ADM 804; or by reporting it in writing to the Department's Office of Professional Responsibility (OPR)." McCain v. Wetzel, No. 1:12-CV-00789, 2012 WL 6623689, at *6 (M.D. Pa. Oct. 26, 2012), report and recommendation adopted, No. 1:12-CV-0789, 2012 WL 6623688 (M.D. Pa. Dec. 19, 2012). In short, "DC–ADM 001 permits an inmate to report abuse in ways other than under DC–ADM 804. Victor v. SCI Smithfield, Civil No. 3:08–CV–1374 at *9–11 (M.D.Pa. Aug.12, 2011) (Nealon, J.) (denying summary judgment on exhaustion grounds because the plaintiff had filed a letter with the OPR regarding abuse and the record contained contradictory reports as to when the investigation on the complaint was completed); McKinney v. Zihmer, Civil No. 1:CV–01–2088, 2010 WL 1135722 at *7 (M.D.Pa. Mar.23, 2010) (Rambo, J.) (denying summary judgment where prisoner claimed that he had complied with the exhaustion requirement by way of DC–ADM 001); Carter v. Klaus, Civil No. 1:CV–05–1995, 2006 WL 3791342 at *3

(M.D.Pa. Dec. 22, 2006) (Caldwell, J.) (denying defendants' motion for summary judgment on exhaustion grounds because the plaintiff pursued a complaint to the OPR under DC–ADM 001, 'the only step he had to take under that policy')." McCain v. Wetzel, No. 1:12-CV-00789, 2012 WL 6623689, at *6 (M.D. Pa. Oct. 26, 2012), report and recommendation adopted, No. 1:12-CV-0789, 2012 WL 6623688 (M.D. Pa. Dec. 19, 2012). Thus, while the court of appeals "has not considered whether a Pennsylvania prisoner can exhaust his administrative remedies through DC–ADM 001, nor what steps would be necessary under that procedure," Victor v. Lawler, 565 F. App'x 126, 129 (3d Cir. 2014), a number of district courts "have found that allegations of abuse do not have to be filed through all three levels of the DOC's grievance system pursuant to DC-ADM 804, if the inmate reports the abuse pursuant to DC-ADM 001." Boyer v. Malet, No. 3:CV-16-0149, 2016 WL 4679013, at *3 (M.D. Pa. Sept. 7, 2016). The acknowledged availability of administrative paths for reporting inmate abuse which lie outside the confines of the general grievance procedure suggests that the Department of Corrections did not view that grievance process as wholly controlling the resolution of inmate abuse claims.

In our view this ambiguity in the versions of these two policy statements which were in effect in October of 2010 weighs heavily against the defendants, who bear the burden of proof and persuasion on this exhaustion issue. Small v. Camden Cnty., 728

F.3d 265, 268-69 (3d Cir. 2013). Further, despite having been provided the opportunity to further develop the factual basis for this particular defense at an evidentiary hearing, the defendants have done little more than provide us with these ambiguous policy statements, and the chronology of Robinson's grievance. Thus, we have received no testimony or other new evidence which assists the defendants in carrying their burden of proof on this particular affirmative defense.

Moreover, when we consider the evidence before us, that evidence reveals two essential facts. First, there is an ambiguity with respect to these two policy statements when it comes to the necessity for an appeal of an inmate abuse investigation result under the general grievance policy, and the relationship between these two policies does not have the clarity urged by the defendants. Second, rather than showing culpable indolence on his part, this chronology in this case reveals that Robinson displayed initiative in pursuing this grievance within days of this alleged incident, alerting prison officials to his allegation of abuse in at least two ways by: (1) reporting it in writing to the Acting Secretary of the Department, and by (2) filing a grievance in accordance with DC–ADM 804.

Having followed these steps, and taken these two approved paths to report this allegation under AD-DCM 001, we conclude that the defendants have not shown a failure to exhaust by Robinson based upon their assertion that Robinson did not

complete an additional step which is not described in either of these prison policies by appealing the outcome of the investigation conducted under AD-DCM 001 pursuant to the general grievance policy, AD-DCM 804. Given that the defendant must plead and prove this affirmative defense of failure to exhaust administrative remedies, Mack v. Warden Loretto FCI, 839 F.3d 286, 295 (3d Cir. 2016), we find on the factual record presently before us that the defendants have not carried their burden of proof on this question. Therefore, this October 2010 excessive force allegation is not subject to dismissal on exhaustion grounds.

## III.   Recommendation

For the foregoing reasons, IT IS HEREBY RECOMMENDED the court find that the defendants have not carried their burden of proof and persuasion on the affirmative defense of failure to exhaust administrative remedies with respect to this excessive force claim against defendants Sutton, Heverly, Best, and Davis, arising out of an October 2010 cell extraction.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is

made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of September 2017.


*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge